THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* CARMELO RIVAS DE JESÚS ET AL., Defendants and Appellants.

No. 13004.   Argued March 10, 1948.—Decided March 19, 1948.

Leopoldo Rojas Flores for appellants. Luis Negrón Fernández, At-
torney General, and J. Rivera Barreras, Prosecuting Attorney,
for appellee.

MR. JUSTICE MARRERO delivered the opinion of the Court.

The District Attorney of Ponce filed an information
against Carmelo Rivas de Jesús and Margaro Meléndez,
charging them with murder in the first degree, in that on
a day of the month of February, 1944, they, wilfully, unlaw-
fully, with malice aforethought, and deliberation killed Tomás
Ortega, a human being, assaulting him with stones and with
a dagger, and inflicting on him contusions and wounds in
consequence of which he died almost instantly. After a joint
trial was held, the jury brought in a verdict of guilty against
both defendants, who have appealed to this Court from a
judgment sentencing them to life imprisonment.

The first error assigned in support of their appeal
is that the lower court erred in overruling the motion for
nonsuit presented by the defendant Margaro Meléndez.

Since a motion for nonsuit is nothing else than a demurrer
to the evidence, and for the purposes thereof the truth of
the evidence introduced is admitted,[1] we will analyze presently
the evidence adduced by the Government.

Ramón C. Umpierre testified that he is a medical surgeon;
that about February, 1944, he practiced his profession in
Orocovis and examined the corpse of Tomás Ortega, which

---

[1] Villanueva v. Suárez, 41 P.R.R. 39; Cruz v. Martínez, 29 P.R.R. 61;
Méndez v. Banco Comercial, 26 P.R.R. 586.

presented a punctured wound on the left side of the chest that pierced the aorta and was necessarily fatal; that said wound was produced by a steel arm (*arma blanca*); and that, in addition, the body showed a contusion in the chest.

*María Marrero* is the widow of the deceased. On February 6, 1944, at about 3:30 p. m., she saw Ortega coming towards his house and carrying a small purchase; that Carmelo Rivas de Jesús and Margaro Meléndez were hiding in a brook and when Ortega passed by, both of them started to run after him; that she then saw Ortega stop and then Margaro took a stone and threw it at him, striking him on the chest; that upon being hit by the stone, Ortega fell to the ground, face upwards, and then Carmelo Rivas stabbed him in the chest, leaving him dead.

*José Santiago* and *Heliodoro Cruz Ramos* went to the house of Ortega in search of him to offer him certain carpentry work and presently heard some cries. They ran to the place from which the cries came and found Ortega lying dead on the ground, and his wife near him, crying: ''They killed him!'' Carmelo Rivas de Jesús was standing at a distance of about a meter, with a knife in his hand, and he said: ''That is the way to kill a dog, so that he will stop bothering others.'' Margaro Meléndez stood some 8 or 10 meters off, and he did not say anything.

*Visitación Rodríguez* was in his house and heard some cries. He went to see what happened and when he arrived he saw María Marrero crying over the body of Tomás Ortega. She told him that Margaro Meléndez and Carmelo Rivas had killed Ortega. Nobody else was there. Ortega had a welt on his chest.

*Rafael Suárez* is an insular policeman who seized the dagger from Carmelo Rivas.

The foregoing is a brief summary of the evidence for the prosecution. There is no doubt that it tends to connect the defendant Margaro Meléndez directly with the commission

of the crime. The testimony of María Marrero shows this clearly. José Santiago and Heliodoro Cruz Ramos, who went to the place of the occurrence upon hearing the cries of María Marrero, found Meléndez standing at about 8 or 10 meters from the corpse. Visitación Rodríguez, who went also there when he heard the cries of María Marrero, likewise stated that she had told him that Margaro Meléndez and Carmelo Rivas had killed the victim. This statement of the witness Rodríguez was admitted by the court without any objection by the defense. Dr. Umpierre also referred to a contusion which Ortega had in the chest.

In view of the foregoing evidence, the court had before it a *prima facie* case against Margaro Meléndez. For the purposes of a motion for nonsuit, we repeat, the evidence for the prosecution must be considered as true in its entirety, and to overrule the motion it is sufficient if a *prima facie* case is presented. The evidence introduced was more than sufficient to make out such a *prima facie* case. *People* v. *Dávila,* 53 P.R.R. 221.

On the other hand, it is a general principle of law that a motion for nonsuit is waived if the defendant, after his motion has been denied, introduces any evidence in support of his defense. Although in the present case counsel for the defendants repeatedly stated that in order to be consistent with the motion for nonsuit they would not introduce evidence of any kind in favor of Margaro Meléndez, nevertheless, the fact is that while the defendant Carmelo Rivas de Jesús was testifying, one of the attorneys for the defense asked the witness: ''While all this happened between you and Tomás Ortega, where was Margaro?'' and Rivas answered: ''In the house.'' Subsequently, the same attorney asked the witness: ''Did you take part in anything?'' and the witness answered: ''No, sir.'' Then the following incident, which we copy verbatim, occurred:

"Did you participate in anything?
Witness: No, sir.
Did you throw any stone at him?
No, sir.
Did you fight with the deceased?
No, sir.
Was there any exchange of words?
No, sir.
Are you sure?
Yes, sir." (Tr. Ev., p. 86.)

This examination of codefendant Rivas de Jesús by one of the attorneys for the defense was but an effort on his part to show the court and the members of the jury that Margaro Meléndez had not committed the crime of murder charged against him. Undoubtedly, it was tantamount to the introduction of evidence in favor of Meléndez and, hence, to a waiver of the motion for nonsuit which had been presented on his behalf shortly before. *People* v. *Zayas,* 65 P.R.R. 504, 506; *People* v. *Méndez,* 39 P.R.R. 841; *People* v. *Cartagena,* 37 P.R.R. 428; *People* v. *Delgado,* 30 P.R.R. 376. The first error assigned is therefore nonexistent.

■■ Defendant Margaro Meléndez further urges that the lower court erred in denying his motion for a directed verdict. The evidence, which we summarized when discussing the first assignment, convinces us that the second error assigned was not committed either. In passing upon the motion presented by the defense, the judge of the lower court said:

"The defense, in the first part of its motion for a directed verdict in favor of Margaro Meléndez, states that there is only one witness for the prosecution which connects the defendant with the facts of the case. That is not true. The witnesses for the defense themselves connect Margaro with the case.

"A witness has testified regarding a fist fight in front of the house of Sierra, and that he, together with the other witness for the defense, intervened in order to separate them. So, from this we see the defendant connected with one part of the occurrence by a witness for the defense itself. Now, regarding the remaining

portion of the occurrence, the widow says that she saw Margaro and the other defendant coming out of a brook, where they had been waiting for her husband; that they came out behind him and he turned around; that he did this because he heard the steps, and upon turning, Margaro hit him on the chest with a stone, which made him fall down, this testimony being corroborated, as to the blow with the stone, by Dr. Umpierre, a witness for the prosecution. Therefore, there are several witnesses who connect the defendant Margaro Meléndez with the facts of the case.

"Now, whether the witness, widow of Ortega, stated the truth or whether, on the contrary, it was the witnesses for the defense— the witness who confined the participation of Margaro to a mere intervention in order to reconciliate the parties—who told the truth, this is a matter for the jury to weigh and decide, since they are the judges of the credibility of the witnesses. Some witnesses for the People stated that when they arrived they saw the defendant Carmelo Rivas de Jesús standing, somewhat apart, with the dagger and his codefendant, Margaro Meléndez, standing still, without doing anything. These witnesses also connect Margaro Meléndez, in the sense that he was at the precise place where the events occurred and in which the body was found; where the witnesses found the body of Ortega. Now, whether these witnesses did not state the truth, and the one who testified truthfully was the last witness for the People, who stated that he was the first one to arrive and when he arrived the victim was there and the defendants had already gone; whether those witnesses failed to state the truth and the one who told the truth was the last witness for the People called Visitación Rodríguez, this is a matter for the jury to determine. That is as to the first part. It should be decided by the jury. There is evidence to consider . . . That is what the jury should determine, whether both of them really and truly committed the act. That is a question which should be decided by the jury and, therefore, I overrule the motion for a directed verdict in favor of the defendant Margaro Meléndez."

The court was correct in acting as it did. In criminal cases tried before a jury, it is incumbent upon the latter to weigh the evidence. *People* v. *Rivera,* 67 P.R.R. 179; *People* v. *González,* 61 P.R.R. 336. And when a motion for a directed verdict is made, it is the duty of the judge to refrain from granting it and to permit the jury to weigh the facts,

unless the judge is fully convinced that the evidence is insufficient to prove the guilt of the accused beyond a reasonable doubt.

█ Finally, the appellants contend that the jury grossly erred in weighing the evidence as to both Margaro Meléndez and Carmelo Rivas de Jesús.

The evidence for the prosecution has already been summarized. That for the defense consisted in the testimony of Carmelo Rivas and Antonio Sierra. According to both of them, the defendant Carmelo Rivas de Jesús acted in self-defense since, upon being attacked by Tomás Ortega, his own life would have been endangered if he had not killed Ortega. Meléndez, according to them, was a mere spectator or peacemaker.

The case was submitted to the jury after the district attorney and counsel for the defense had delivered the corresponding addresses, and after the court had submitted the necessary instructions. It was incumbent on the jury to weigh the evidence and to resolve any conflict therein. It did so. In our judgment, the evidence introduced serves as a proper basis to show the correctness of the verdict rendered. Moreover, this Court has held in numerous cases that the verdict of the jury will not be disturbed on appeal unless it is shown that the weighing of the evidence was manifestly erroneous or that the jury acted under the influence of passion, prejudice, or partiality. Such a showing has not been made in the present case.

█ The defendant Margaro Meléndez, in discussing his third assignment of error also contends that he should not have been convicted of murder, since the evidence showed at the most that he threw a stone at Ortega, but that he did not inflict on the latter the wound which caused his death. This contention is not correct either.

Pursuant to § 36 of the Penal Code ''All persons concerned in the commission of a crime whether it be felony or

misdemeanor, and whether they directly commit the act constituting the offense . . . or not being present, have advised and encouraged its commission . . . are principals in any crime so committed.'' The evidence, to which the jury accorded credit, showed that both defendants lay in ambush for the deceased and that, when the latter passed by, Margaro threw a stone at him, which made him fall to the ground, and then his codefendant Rivas mortally wounded him. The connection of Margaro with the crime has been clearly established. See *People* v. *Rodríguez,* 45 P.R.R. 67, 69; *People* v. *Méndez, supra; People* v. *Vélez et al.,* 36 P.R.R. 521; *People* v. *Vélez et al.,* 32 P.R.R. 355; *People* v. *Marini,* 27 P.R.R. 492; *People* v. *Cruz et al.,* 26 P.R.R. 366; *The People* v. *Bianchi, Jr. et al.,* 18 P.R.R. 560; and *The People* v. *Paz,* 12 P.R.R. 98.

■ Although it has not been made the subject of a special assignment, the defendants contend at the end of their brief that the violent and untimely utterance or statement of the district attorney in his address to the jury, charging corruption in connection with the testimony of Visitación Rodríguez, must necessarily have influenced the final result of the proceeding, despite the fact that said statement was stricken out by the judge, who cautioned the jury not to take it into consideration. We do not believe that there has been error in this connection either. The defense itself admits that the court promptly instructed the jury not to take into consideration the statement of the district attorney regarding the witness. We have already decided that improper statements of this character, made by a district attorney during the course of a trial in the presence of the jury, do not give rise to a mistrial when the court forthwith instructs the jury not to take such statements into consideration. See *People* v. *Zayas,* 65 P.R.R. 504, 506; *People* v. *Piazza,* 60 P.R.R. 561.

For the reasons stated the judgment rendered should be affirmed.